WILLIAMS, receiver &c. *vs.* BABCOCK.

Although the authority of a mutual insurance company, organized under the act of 1849, to commence business, and issue policies, is by the act made to depend upon the making and filing of the certificates of the comptroller and secretary of state, mentioned in the 11th section, the statute contemplates that the corporation shall enter into contracts, before the certificates are made, or filed; and by necessary implication authorizes the making of such contracts.

Such contracts, however, would become of no avail, if the organization was not subsequently completed, by the making and filing of the certificates. They are to be regarded in the nature of preliminary engagements, to become valid upon the complete organization of the company, according to the requirements of the statute.

But a note, not payable at the end of, or within, twelve months from its date, and not negotiable, but payable to the company or its treasurer for the time being, and in such portions and at such times, as the directors of said company may, agreeably to their charter and by-laws, require, is not such a note as is required by section five of the statute.

The act of 1849 was not designed to designate the class of notes taken preliminarily under section five, but such notes only as should be taken after the organization should become complete, and the charter of force as a law or rule of action.

Where an insurance company on the 3d of May, 1850, received an application from the defendant, for insurance, and his promissory note for the premium, *payable in such portions, and at such times, as the directors should require*, and issued a policy on the same day, which was a month and a half before the company was authorized to commence business, and issue policies, under their charter, or to enter into any engagement, except upon receiving notes of the character prescribed by section five of the statute; *Held* that the policy thus issued was issued without any authority to uphold it, and was consequently void, and the note without consideration.

The appointment of an individual as receiver of a mutual insurance company, confers upon him the same power to make assessments, upon premium notes, and to determine the time of payment, which the directors had, and authorizes him to give notices thereof in the same manner. But the appointment itself does not determine either the amount of the indebtedness of a member, or the time of payment.

Where the obligation of the assured, to pay, is made, by the terms of the premium note, to depend upon an assessment, and notice thereof, it is the duty of the receiver to proceed forthwith and make an assessment and give the notice. Until he has done this, he cannot maintain an action upon a premium note.

Assessment and notice, are essential conditions, both in respect to the amount to be paid, and the time of payment. And until these are shown, no breach on the part of the maker is established. If there is no allegation or proof, on that subject, in an action by the receiver, upon a premium note, the plaintiff should be nonsuited.

APPEAL by the plaintiff, from a judgment of nonsuit. The complaint alleged the organization of " The New York State Mutual Insurance Company," on the 18th of June, 1850, under the act to provide for the incorporation of insurance companies ; that on *the 3d day of May*, 1850, the defendant made application for insurance ; that a policy was thereupon issued, dated May 3d, 1850 ; that a note was given for such policy so dated, as its consideration, payable in such portions and at such

time or times as the directors of said company might, agreeably to their charter and by-laws, require.  The complaint then set forth the appointment of the plaintiff as receiver of the said company, and an order of the court directing him to collect the notes.  The answer denied the organization of the company, the execution of the note, and the amount unpaid.  The plaintiff proved, on the trial, the declaration and charter of the company, the certificate of the commissioners, appointed to examine into and certify that the company had agreements for insurance, the premiums upon which amounted to the sum of $100,000, which was dated June 10th, 1850 ; the certificate of the comptroller, made June 11th, 1850 ; a certificate showing that these instruments were filed in Wayne county clerk's office, June 18th, 1850 ; an order appointing the plaintiff receiver of the company ; also the bond of the receiver, to which the defendant objected ; also, two orders, made on application of the plaintiff, to collect the notes.  These were objected to by the defendant ; also, the application for insurance ; also the note given by the defendant, which was as follows :

" 300.00.  For value received, in policy No. 558, dated May 3d, 1850, issued by the New York State Mutual Insurance Company, I promise to pay the said company, or their treasurer, for the time being, the sum of three hundred dollars, in such portions, and at such time or times as the directors of said company may agreeably to their charter and by-laws require.

J. K. BABCOCK.

J. M. WHEELER, surety.

Dated Canandaigua, May 3d, 1850."

The plaintiff then rested.  Whereupon the defendant moved that the plaintiff be nonsuited, on the following grounds : 1st.  That it appeared from the proof that the company was not organized, nor authorized to issue policies, nor take notes for policies of insurance, till June 18th, 1850 ; whereas the note, on its face and by its terms, was given May 3d, 1850, and for a policy of insurance as its consideration, issued on that day by a company not in existence, and was therefore without consideration and void.  2d.  That the note purported on its face to be for a pol-

icy of insurance already issued, and not in consideration of an agreement to insure, and that there was no proof to show that it was given upon an agreement to insure. 3d. That in and by the charter, the company, contrary to law, divided its risks into two classes and its notes into two classes, and provided in such division that the losses in one class should not be paid from funds belonging to the other class, thereby creating two companies, neither of which had the amount of capital required by the act of June 10, 1849, viz. $100,000. 4th. That the premium note of the defendant was not in the form required by the 5th section of said act, and was not payable at the end of or within twelve months from the date thereof, nor at any time, and was not negotiable. 5th. That there was no evidence that payment of the note had been required by the directors, or any competent authority, pursuant to the charter and by-laws of the company, and the terms and conditions expressed in the note. 6th. There was no evidence of any losses or expenses sustained by the company, requiring its payment, nor of any assessment having been made thereon, pursuant to the charter and by-laws. 7th. That there was no evidence to show that the note was due, or any part thereof. The court granted the motion for nonsuit, and the plaintiff excepted.

*J. M. & H. F. Hatch,* for the appellant. I. This company was a "moneyed corporation." (1 *R. S. 4th ed.* 1122, § 54.) The notes taken by it for premiums on insurances are the capital stock of the company, (*Laws of* 1849, *p.* 441, *ch.* 308, §§ 5, 11, 13,) and the plaintiff as receiver is imperatively required by the statute, (2 *R. S. part* 3, *ch.* 8, *title* 4, *arts.* 2 *and* 3, 4*th ed. pp.* 704 *to* 714, *and especially by* § 79, *p.* 711,) to sue for, collect and recover any sum remaining due thereon. (*Hyde* v. *Lynde,* 4 *Comst.* 387. *Van Buren* v. *The Chenango County Mutual Ins. Co.* 12 *Barb.* 671. *Hill* v. *Reed,* 16 *id.* 280, 286. *Thomas* v. *Achilles, Id.* 491. *Hyde* v. *Beardsley, Hyde* v. *Marvin, Hyde* v. *Sawyer, decided in general term 6th dis-*

*trict. White* v. *Leelores, 4th district, November* 1855, *decided by C. L. Allen, J.*)

II. In the hands of the company the circumstances and mode of their collection are regulated by the general insurance act of 1853, and the charter and by-laws of the company, and the terms of the note, (*Hurlbut* v. *Root,* 12 *How.* 511;) but in the hands of a receiver, the mode of collection is regulated by the revised statutes in regard to insolvent corporations. (2 *R. S.* 1*st ed.* 462, 469, §§ 67, 68, 69, *p.* 470, § 79. *Hurlbut* v. *Carter,* 21 *Barb.* 221.)

III. The order appointing the receiver is in the nature of a decree in a creditor's suit, where several distinct creditors have claims for the payment of their demands ratably, or in order of priority ; and it is no defense to an action on the note to say that the debts of the corporation are not sufficient to require the whole capital to be paid in ; because if a surplus is in the end found to exist, after paying the liabilities of the corporation, the expenses of collection, and the receiver's fees, that surplus is directed by the statute to be refunded to the members. (10 *Paige,* 290, 382. 1 *Barb. Ch.* 122. 2 *R. S.* 1*st ed. p.* 385, § 83. 12 *Barb.* 675.)

IV. The receiver is authorized and empowered, under an order from the court appointing him, but not otherwise, to assess the notes and collect a less amount than the unpaid balance upon them ; but it is not made his duty ; and, he lacks the power, unless ordered by the court to do so. (*Laws of* 1852, *p.* 67, § 2. *Act of* 1853, *p.* 909, § 13. *Laws of* 1854, *p.* 502, § 1.)

V. It is impossible to close up a mutual insurance company, by making assessments upon the capital, because the members are guarantors of each other's responsibility, and the responsible must be reassessed to pay from assessment to assessment the uncollectable assessments, or shares of insolvent members, interminably ; and there is no rule for determining who of them are, in the words of the statute, (§ 79,) insolvent; or what decides the uncollectability of an assessment. (*Bangs, receiver &c.* v. *Gray,* 2 *Kern.* 477.)

Williams *v.* Babcock.

*M. S. Newton,* for the defendant. I. The New York State Mutual Insurance Company was not organized till the 18th day of June, 1850, and could not issue any policy of insurance till that time. (*See Gen. Ins. Law,* 1 *R. S.* 1279, 4*th ed.*) The certificate and oath of the committee appointed by the comptroller, were made June 10th, 1850. The comptroller's certificate was made June 11th, 1851, and the charter &c., was filed in Wayne county clerk's office, June 10th, 1850. The company was therefore not organized, nor could it issue policies of insurance till June 18th, 1850.

II. The complaint itself alleges that the company was organized June 18th, 1850.

III. But the note in this case is a premium note given on an application for insurance, with a policy of insurance for its consideration, not on an agreement to insure. The note is dated May 3d, 1850 ; the policy is dated May 3d, 1850, and issued at the same time. This was more than a month before the organization of the company. The policy was therefore illegal and the note void.

IV. But the note by its express terms—the same being part of the contract of the defendant—is payable " in such portions and at such time or times as the directors of said company may, agreeably to their charter and by-laws, require." By the charter of the company, the insured are only bound to pay for losses in proportion to the amount of their notes respectively. They are only bound to pay, after the loss is ascertained, the proportion determined by assessment, after notice is published, after thirty days' notice by publication or otherwise, and after refusal or neglect to pay assessment. The contract, therefore, of the defendant is not only expressly limited and conditional, but the charter, under and in pursuance of which it is made, enters into and forms part of the contract, and declares those limitations and conditions.

V. The act of 1853, in regard to mutual insurance companies, contains the same provisions as the note and the charter in this case, and enforces by statute the same conditions and limitation of liability which are contained in the contract. This

company is made subject to that act. (*Laws of* 1853, § 20, *p.* 913 ; § 13, *p.* 909.)

VI. By the express terms of the contract, by the provisions of the charter and by the requirements of the statute, a loss sustained by the company, an assessment to determine the portion of the note liable to contribute to the payment of such loss, and notice for thirty days of such assessment, must be shown as matters precedent to the liability of the defendant. (*Hurlbut* v. *Root,* 12 *Howard,* 511. *Shaughncsey* v. *The Rensselaer Ins. Co.,* 21 *Barb.* 605. *Thomas* v. *Whallon, decision at gen. term, 5th dist. Bangs* v. *McIntosh,* 23 *Barb.* 591.) In this case the complaint does not allege, nor does the proof show, any loss, assessment, or notice, or other ground for the plaintiff to recover, except the making of the note and the organization of the company, and the appointment of the plaintiff as receiver.

VII. The receiver only takes the assets of the company, and the contracts or notes held by the company cannot be changed in their terms by being transferred either to an officer appointed by the court or to any other person. (*Shaughnesey* v. *The Rensselaer Ins. Co.,* 21 *Barb.* 605.)

VIII. The case of *Van Buren* v. *The Chenango County Mutual Ins. Co.,* (12 *Barb.* 671,) was a motion to determine the commissions to which the receiver was entitled, and the remarks of the judge beyond deciding that question, were mere *obiter dicta.* If the court intended to say that the premium notes, being the assets of the company, were changed in their terms by being transferred to a receiver, this opinion is founded upon an erroneous view of the statute relating to receivers ; for the statute only provides, that " if there shall be any sum remaining due upon any share of stock subscribed in such corporation, the receiver shall immediately proceed and recover the same." (2 *R. S. 4th ed. p.* 711, §§ 79, 69.) The receiver can collect only the sum due. Neither the law makers nor the court could violate the contract, and make a note due which on its face was not due. The statute, too, only relates to stock (moneyed) subscriptions to stock corporations, in which

stock is taken by stockholders, not to mere indemnity notes mutually pledged by the makers to indemnify each other, and payable upon certain contingencies.

IX. The appointment of a receiver is no evidence that all of the premium notes are due; for a receiver may be appointed upon the return of an execution, however small, unsatisfied, and though one per cent on the notes would pay it. (2 *R. S.* 4*th ed. p.* 705, §§ 44, 36.)

*By the Court,* JOHNSON, P. J. The defense to this action, most insisted upon on the part of the defendant, rests upon two grounds. 1. That the note was given for an insurance policy which was executed and issued without any authority of law, and is therefore void, and the note without consideration. 2. That there is nothing in the complaint, or the evidence, to show that any thing was due, and payable, upon the note, when the action was commenced.

1. The note is dated on the 3d of May, 1850, and shows upon its face, that it was given for value received, in policy of insurance No. 558, issued by the company of which the plaintiff is the receiver, bearing the same date.

This company was organized under the act of 1849. (*Sess. Laws of* 1849, *ch.* 308, *p.* 441.) The fifth section of the act provides that mutual insurance companies shall not commence business, until agreements have been entered into, for insurance, the premiums on which shall amount to one hundred thousand dollars, and the notes received therefor. By section 11, the authority of the company to commence business, and issue policies, is declared to be, the certificates of the comptroller and secretary of state, required by that section, filed in the office of the clerk of the county in which the company is located. The certificate of the comptroller or the persons appointed by him, must show that the company has received, and is in actual possession of, the premium notes to the amount of $100,000.

It appears that these certificates of the comptroller and secretary of state, were not filed until the 18th of June subsequent

to the date of the note and policy. But while the authority of the company to commence business, and issue policies, is made to depend upon the making and filing of these certificates, it is apparent that the act contemplates that the corporation shall enter into contracts, before the certificates are made or filed, and by necessary implication, authorizes the making of such contracts. This is necessarily so, as one of the certificates must show that contracts to the requisite amount have actually been made. These contracts would of course become of no avail, if the organization was not subsequently completed, by the making and filing of the certificates. They are to be regarded in the nature of preliminary engagements, to become valid upon the complete organization of the company, according to the requirements of the statute.

The difficulty on this point, however, grows out of the fact that the note in question is not such a note as is required by section 5. Those notes are expressly required to be payable at the end of, or within, twelve months from their date. They are to be considered a part of the capital stock of the company, and are to be negotiable, and collectable for the purpose of paying losses. This clearly is not such a note. It is not payable at the end of, or within, twelve months from its date, and is not negotiable. It is payable to the company, or its treasurer for the time being, and in such portions, and at such times, as the directors of said company may, agreeably to their charter and by-laws, require. The charter is thus made a part of the undertaking. By referring to the charter, section 15, it will be seen that members depositing their notes were only bound to contribute towards the payment of losses and necessary expenses, after the application of all other funds provided for that purpose, and in proportion to the amount of their notes. And by section 16, the directors, after ascertaining losses sustained, or after judgment for any loss or damage, are required to settle and determine the sums to be paid by the several persons liable to contribute towards the payment, as their proportion, and to publish notice thereof. Every member so assessed, has thirty days after publication of the

notice, in which to make payment of the amount assessed, as his proportion, before an action can be maintained for its recovery. It will thus be seen that the note in question is in no respect like those prescribed by section 5 of the act of 1849. The charter was not, I apprehend, designed to regulate the class of notes taken preliminarily, under section 5, but such notes only as should be taken, after the organization should become complete, and the charter of force as a law, or rule of action.

It is to be presumed, I think, from the certificates of the comptroller, and the persons appointed by him to make the examination, that the company had at that time at least $100,000 in notes of the description and character required by section 5. But this could not have been one of them. From the allegations in the complaint, and the evidence afforded by the note, which is the only evidence upon the subject, it appears that the company received the defendant's application, and the note in question, on the 3d of May, 1850, and issued the policy on the same day. The note acknowledges the receipt of the policy. This was a month and a half before the company was authorized to commence business and issue policies, under their charter, or to enter into any engagement except upon receiving notes of the character prescribed by section 5. The transaction was, therefore, without any authority whatever, at the time, and I do not see how the subsequent perfection of the organization could render it valid. It could relate back to such transactions only as were authorized to be done preliminarily, and render them valid. It could not operate to legalize a void transaction. Corporations have no powers, except such as are conferred in express terms, or by necessary implication, by their charter.

It seems to me, therefore, that this policy, issued at that time, upon the note in question, was without any authority to uphold it, and that consequently it is void, and the note without consideration. This objection was distinctly taken by the defendant's counsel upon the trial, in his motion for a nonsuit.

2. Conceding, however, for the purposes of this action, that

Williams *v.* Babcock.

the policy was regularly issued, and the note a valid subsisting obligation, is there any sufficient evidence that it was due, or any portion of it, when the action was commenced? It is insisted on behalf of the plaintiff, that the note must be deemed and taken to be due, because the statute required notes taken, at the time this was given, to be made payable at the end of, or within twelve months from, their date. But this does not follow. We must look at the note, and the charter, in order to determine when it was payable. It may be that it was taken contrary to the statute. The statute could not operate to make it due and payable within a year, if by the terms of the agreement, it was payable at a different time. Nor will it render a transaction valid, which has been entered into contrary to its provisions.

We have already seen, by referring to the terms of the note, and the charter, that the defendant, so far from being liable to pay unconditionally the whole amount, or to pay at any specified time, was under no obligation to pay at all, until after all other funds provided for the payment of losses and expenses had been applied; nor until the expiration of thirty days after his proportion of an ascertained loss, or of a judgment, had been determined by the directors and notice of such proportion published. And then the amount assessed, only, could be collected. It is clear, therefore, that as between the defendant and the corporation, nothing was due, and no action could have been maintained upon the note without showing at least an assessment, and the publication of a notice thereof. The creditors, as to their right of action against the corporation, stand upon a different footing. Their right of action does not depend at all upon any assessment or notice, but upon a loss, and non-payment according to the terms of the policy. And it remains to be seen whether a receiver of such a company, who represents both the corporation and its creditors, can maintain an action upon a premium note, against the maker, when the company could not, had no receiver been appointed. In other words, without any determination of the amount to be paid, and notice of such determination, or assessment, published. It is true that the note, although given and payable to the company, is given for the

benefit of the insured, who may sustain losses, and whose right of action as respects the company, does not depend upon any of the conditions of the premium note, and that the receiver sues and recovers, primarily, for the benefit of the creditors. But the action is upon the promise, and must be maintained upon it, or it cannot be maintained at all. Although the promise is for the benefit of persons insured, sustaining losses, there is no obligation to pay generally the face of the note, but so much only as shall be necessary to satisfy such losses, after the proportion had been ascertained. And I do not see how the insolvency of the company, and the appointment of a receiver, can change such a promise into an absolute unconditional promise to pay the entire sum mentioned in the note. At the time of the insolvency of the company, and the appointment of the receiver, the makers of these premium notes were debtors of the company in uncertain amounts, whose debts were not yet due, and would not become due until the amount should be ascertained and determined, and notice given. The appointment of a receiver could not operate to change the nature or terms of these agreements. Courts have no power, any more than legislatures, to change and impair the essential obligations of a valid contract, and to convert a limited and conditional obligation into an unconditional one. And no such rule as that contended· for on behalf of the plaintiff is necessary for the protection of the rights of the cred-. itors. No danger is to be apprehended, of any failure of justice. The statute (*Sess. L. of* 1852, *p.* 67) expressly confers upon receivers of such corporations, under the authority and sanction of the court appointing them, the same power to make assessments, upon premium notes, which the directors had, and to give notices in the same manner. And they are given the same rights and remedies, upon the non-payment of the assessments, that are given to the directors or to the corporation, by the charter. Tho appointment therefore clothed the plaintiff with the necessary power to determine the amount of the defendant's indebtedness, and the time of payment; but the apportionment did not determine either. The provisions of the revised statutes, (2 *R. S.* 469, § 69,) making it the duty of a receiver to proceed immediately

Williams *v.* Babcock.

to recover any sum remaining due, upon any share of stock sub-scribed in the corporation, was not intended to confer, and could not confer, a right of action, until the payment had become due by the terms of the subscription.

The same answer may be given to the order made at the special term, ordering and directing the plaintiff to proceed and collect the unpaid balances on the premium notes. That order could not change the time of payment, or the conditions upon which, by the contract itself, payment was made to depend. In either case it is made his duty to proceed by action, as soon as a right of action accrues. If the obligation to pay is made by the terms of the subscription or promise, to depend upon an assessment, and notice, which he has power to make and give, it is his duty to proceed forthwith and make such assessment and give the notice. The promise cannot be enforced, by action, until some breach is established against the promissor, by the evidence, whether the action be by the directors, or an assignee, or a receiver. The mere failure of the corporation to pay, according to the terms of the policy, and even becoming insolvent, is no sufficient evidence of any breach on the part of the promissor. Indebtedness by the corporation is an essential prerequisite to any liability, but the immediate obligation of the maker to pay, depends upon other and further conditions. Conceding these notes to constitute the capital stock, or to be in the nature of subscriptions to capital stock, it does not follow that they can be collected until they become due and payable. Assessment and notice are essential conditions, as respects both the amount to be paid, and the time of payment; and until these are shown, no breach on the part of the maker is established. (*Devendorf* v. *Beardsley*, 23 *Barb.* 656. *Bangs* v. *McIntosh*, *Id.* 591. *Thomas* v. *Whallen, Gen. Term, 8th district.*) As there was no allegation or proof upon this subject, the nonsuit was properly granted, and a new trial must be denied.

[MONROE GENERAL TERM, September 7, 1857. *Johnson, Welles* and *T. R. Strong*, Justices.]